**MEIER, Immigration Inspector, v. LEBARIS.**

Circuit Court of Appeals, Eighth Circuit.
November 23, 1927.

No. 7552.

**1. Habeas corpus ⊜⇒113(12)—Appellate court, in habeas corpus by alien held under deportation warrant, will consider proof before inspector and additional evidence received under stipulation.**

Where, on habeas corpus proceeding by alien held under warrant of deportation, it was stipulated that case should be heard by court on its merits and testimony was received, appellate court will consider the case on statement of proof in record before inspector, as well as on additional evidence in court taken under stipulation.

**2. Aliens ⊜⇒54(17)—Evidence held to sustain finding on habeas corpus that alien neither shared in prostitutes' earnings nor was connected with house of prostitution (Comp. St. § 4289¼a et seq.).**

In habeas corpus proceeding to secure release of alien held under deportation warrant, evidence *held* to sustain finding that charges of sharing earnings of prostitutes and being connected with management of house of prostitution, in violation of Act Feb. 5, 1917 (Comp. St. § 4289¼a et seq.), were not sustained by proof.

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Application for habeas corpus by Mary Lebaris against J. F. Meier, United States Immigration Inspector. Order discharging petitioner, and respondent appeals. Affirmed.

Edward M. Morrissey, Asst. U. S. Atty., of Salt Lake City, Utah (Charles M. Morris, U. S. Atty., and Jesse K. Smith, Asst. U. S.

Atty., both of Salt Lake City, Utah, on the brief), for appellant.

Alonzo W. Watson and J. J. Whitaker, both of Salt Lake City, Utah, for appellee.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

LEWIS, Circuit Judge. While appellee, an alien, was being held under a warrant issued by the Secretary of Labor commanding that she be deported to Syria, the court below issued its writ of habeas corpus. The Immigration Inspector in his return set up the Secretary's warrant as his justification for the detention. The warrant recited that the Secretary had become satisfied on the proof submitted to him that the alien, who landed at the port of El Paso, Texas, about July 1, 1908, had been found in the United States in violation of the Act of February 5, 1917 (Comp. St. §§ 4289¼a et seq.), to wit: "That she has been found receiving, sharing in, or deriving benefit from the earnings of a prostitute; and that she has been found connected with the management of a house of prostitution; and that she has been found employed by, in or in connection with a house of prostitution or music or dance hall, or other place of amusement, or resort habitually frequented by prostitutes, or where prostitutes gather."

It appears that a summary statement of the evidence taken before the inspector, on which the Secretary made his findings and issued the warrant, was submitted to the court when a hearing on the return to the writ came on; but it further appears that at that time it was stipulated between the district attorney and counsel for the alien that the case should be heard by the court upon its merits, and appellant called two witnesses, police officers, who were examined and cross-examined at length. The court then found that none of the charges were sustained by the proof and ordered the alien discharged and set free, from which this appeal was taken.

[1, 2] We think we should consider the case on the statement of proof in the record taken before the inspector, as well as on the additional evidence in court taken under the stipulation; that appears to have been the course taken by the District Judge. Five witnesses testified against the alien before the Immigration Inspector, of whom three were police officers employed as members of the so-called Anti-Vice Squad in the City of Salt Lake. One was a deputy United States Marshal and the other a United States Immigration Inspector. It appears that the alien, for several years prior to that hearing, had maintained a rooming-house in Salt Lake City known as the Ogden Rooms, consisting of about twenty rooms on the first and second floors of the building. These witnesses testified to the arrests of three women in the rooming-house during about three years, one of them, who was a servant at the place, being arrested twice. They were arrested as prostitutes. The police officers said the house was a resort for prostitutes. The deputy marshal testified that he was at the Ogden Rooms on one occasion and he saw two or three girls who, in his opinion, judging them from their general appearance and demeanor, were prostitutes. The Immigration Inspector had no knowledge of the place, but testified to having examined the city police record and the statements he found therein of some arrests made at the street number of the rooming-house. Two police officers were the only witnesses who testified before the court under the stipulation. Eight witnesses, including the alien, testified in her favor before the Immigration Inspector. The alien denied that the rooming-house was frequented by prostitutes. She testified that she never received any money from a prostitute, that one of the girls arrested was employed by her as a chamber maid and she did not know that the girl practiced prostitution or was a bad woman, that the other two girls lived in the house with their husbands, and the mother of one of them, for about eighteen months, that she did not know that either of them was a prostitute but that they could have brought men there for a short period of time and she knew nothing about it, that she never saw anything of that kind. One of her witnesses was a traveling man, and for a period covering about four years he had stopped at the Ogden Rooms about twenty times, that he considered the place at respectable one and would not have stayed there if he had had any impression that prostitutes were permitted there, that he never saw any women there except the alien and the chamber maid. Another witness had lived there for about three years. He knew the chamber maid and knew that she was arrested several times, but he had no knowledge of any prostitution there. A practicing physician of the city testified he had known the alien for eight or nine years, that while she kept the rooming-house he had been there twenty to thirty times professionally and never saw any disorderly conduct at the place, and never heard or saw anything that would cause him to believe that girls were there practicing prostitution. A lady officer in the Salvation Army testified that she lived there for about two weeks in 1923, knew the .

alien and during that time did not see any disorderly conduct or any girls there who appeared to be prostitutes. Counsel for the alien testified that he had been a Judge for eight years, that he had known the alien for seven or eight years, that he had acted as her attorney for several years, that he believed she was a moral woman leading a decent life, and that in his opinion the officers and members of the Anti-Vice Squad were prejudiced against her. A Mr. and Mrs. William Whitaker testified that they had known the alien for eight years, that they considered her to be a good woman, that they had been around the Ogden Rooms a number of times and had not seen any conduct there that would lead them to think it was a house of prostitution or that prostitutes were living there. There was no evidence tending in the slightest way to support the charge that the alien shared in the earnings of prostitutes. She is an illiterate woman, can neither speak nor write English. It does not appear how much help she had, if any, in addition to the one girl who cared for cleaning the rooms, or how active the alien herself may have been in supervising and looking after the place. It does appear that the police officer who went there to see her about her chamber maid found the alien in her kitchen. The circumstances, as far as they go, leave the impression that if there was prostitution the alien was ignorant of the fact at the time.

The contention that the evidence before the inspector was sufficient to support some of the findings in the warrant, and that was enough to sustain the order of deportation, may be acceded to; but that is not the case brought here. It was stipulated on return to the writ that the court should hear it on its merits. The facts presented were thus submitted to the estimate and judgment of the court. The District Judge was in a better situation to make a correct estimate than an Appellate Court can make. The order appealed from is

Affirmed.