Hatsue Ishii GILLES, Plaintiff,

v.

Albert DEL GUERCIO, as District Director, Immigration and Naturalization Service, Los Angeles, California, Defendant.

No. 19918.

United States District Court
S. D. California, Central Division.
May 9, 1957.

Theodore E. Bowen, Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, Arline Martin, Asst. U. S. Attys., Los Angeles, Cal., for defendant.

BYRNE, District Judge.

An officer of the Merchant Marine, while in Japan, met, fell in love with and married the plaintiff, who is a Japanese girl. He brought her back to the United States and she was admitted for permanent residence. After they had lived together as man and wife for approximately two years the husband decided he wanted to be free of his wife. He called at the office of the Immigration and Naturalization Service and informed Investigator Buzzelle that he would like to get his wife deported. The Service issued a warrant of arrest charging plaintiff with having engaged in prostitution prior to entry.

The alien here seeks judicial review of the administrative decision which ordered her deportation on the warrant charge. Her claim is: That she was not given a fair hearing in that her husband was permitted to testify against her; that her counsel was not permitted full cross-examination of her husband; that she was not permitted to call character witnesses to testify as to her reputation; that a prior written statement made by her without the aid of an interpreter was admitted in evidence and also a written statement of her husband.

 Over the plaintiff's objections, the Special Inquiry Officer permitted her husband to testify against her and admitted his prior written statement. With certain exceptions [1] not applicable here, a husband cannot be examined for or against his wife without her consent. "That which is privileged is testimony in any form, by the husband or wife against the other (including prior extrajudicial statements of the husband)." Wigmore, Evidence, § 2232. This rule which is based on public policy should be respected in administrative hearings including deportation proceedings. See Cahan v. Carr, 9 Cir., 47 F.2d 604.

Both the Special Inquiry Officer and the Board of Immigration Appeals apparently recognized that there was a marital privilege, but confused the privilege pertaining to one spouse testifying against the other with the one relating to communications made by one to the other during the marriage. The Special Inquiry Officer ruled that the husband could not be examined regarding matters occurring during the marriage, but could

---

[1] The exceptions to the privilege include civil actions by one spouse against the other and criminal prosecutions for a crime committed by one against the other. As to the purpose of the exceptions and the necessity therefor see Wigmore, Evidence, § 2239.

be examined as to matters prior to the marriage.

The rule is that *during the existence of the marriage,* the husband or the wife may not be examined against the other *as to any matter,* regardless of whether it pertains to a communication made by one to the other, and regardless of whether it relates to a matter occurring during or prior to the marriage. With respect to communications, the rule is that during *or after* the marriage neither can be examined in a proceeding against the other as to any communication made by one to the other *during the marriage.*

■ The Special Inquiry Officer should not have permitted the husband to testify against the alien and should not have received his statement in evidence. The statement not only violated the privilege, it was hearsay.

■■ It was also error to limit the cross-examination of the husband to matters that occurred prior to the marriage. The right to cross-examine even in deportation proceedings is a constitutional one. Whitfield v. Hanges, 8 Cir., 222 F. 745; Ungar v. Seaman, 8 Cir., 4 F.2d 80; In re Chan Foo Lin, 6 Cir., 243 F. 137. There can be little doubt that the husband had a personal interest in getting rid of his wife. In the husband's pre-hearing statement the Investigator who was interrogating him stated, "On your first appearance at this office today you made the remark that you would like to get your wife deported." The interest and prejudice of the husband vitally affected his credibility and great latitude should have been allowed the cross-examiner to test the credibility of the witness.

The original hearing was adjourned to permit the alien an opportunity to produce witnesses. At the resumed hearing she presented her husband's stepmother and two other witnesses to testify to her character in respect to those traits of character which ordinarily would be involved in the commission of prostitution. When the first witness was called and the Special Inquiry Officer learned that the acquaintance of the witness with the alien was limited to the period subsequent to the alien's entrance into the United States, he ruled: "In view of the fact that the character of the respondent subsequent to her entry into the United States is not in issue in this proceeding and in view of the fact that the testimony of the witness which is being offered would be limited to character, your motion to take the testimony of that witness will therefore be denied." The ruling was the same when the other two witnesses were offered.

■ Evidence of good reputation in respect to those traits of character involved in the commission of the offense charged, is essentially relevant, because the trier of fact may reason that it is improbable that a person of good character in such respects would have conducted herself as charged. Such evidence is always admissible. Hawley v. U. S., 10 Cir., 133 F.2d 966; People v. Jones, 42 Cal.2d 219, 266 P.2d 38. Its admissibility is not affected where the reputation offered is of a time subsequent to the time of the act in issue; a person's trait or disposition a month or a year after a certain date is as evidential of his trait on that date as his nature a month or a year before that date.[2] In deportation cases where the charge is prostitution character witnesses are often of the utmost importance in determining the issue. See Meier, Immigration Inspector v. Lebaris, 8 Cir., 23 F.2d 187.

After her husband had visited the office of the Immigration Service seeking her deportation, the alien was called in and a statement taken from her. She was not represented by counsel and she was not informed of the charges against her. Indeed the officer taking the statement did not even inform her of the fact that her husband had lodged a complaint against her and that they were moving towards deporting her. He said: "I want to take a statement from you, that is to ask you questions under oath, regarding your right to be in and remain in the United

2. *Id.,* § 1618.

States." No interpreter was present. When asked if she understood the meaning of the word, "prostitution", she replied, "No, I don't know."

At the subsequent hearing on June 15, 1955, the Special Inquiry Officer attempted to interrogate the alien without the aid of an interpreter. It was quite apparent that the hearing could not be conducted without an interpreter and one was used. The alien testified regarding her knowledge of English: "I understand it a little,—I can talk a little." The stenographer who had taken the previous statement testified on direct examination that the investigator interrogating the witness "sometimes rephrased the question, put it in simpler language to be sure that she would understand", and on cross-examination, in reply to the question, "Now, isn't it a fact that sometimes questions were asked by the investigator, Mr. Buzzelle, and he rephrased the question and asked it over two or three times before an answer was arrived at that was written down here", she stated, "He did rephrase some of the questions, I believe." The plaintiff, testifying through an interpreter at this hearing, insisted that she could not have given the incriminating answers attributed to her at the time the previous statement was taken, because she had never engaged in prostitution as it had subsequently been explained to her.

The case of Gonzales v. Zurbrick, 6 Cir., 45 F.2d 934, 937, like the present one, involved a deportation proceeding for prostitution. At a reopened hearing the alien stated that the incriminating statements appearing to have been made by her upon the primary examination were not true, but were caused by the incompetency of the interpreter. The Court of Appeals, in remanding the case, stated: "The function of an interpreter is an important one. It affects a constitutional right. The right to a hearing is a vain thing if the alien is not understood."

Ungar v. Seaman, 8 Cir., 4 F.2d 80, is authority for the proposition that statements taken from an alien charged with a deportable offense prior to his hearing, *when he was without counsel, and without notice of the charges against him* were violative of the basic requirement of due process and were not admissible into evidence at the deportation hearing.

It is well established that procedure in deportation cases will not be subjected to technical tests and that such hearings are not bound by the strict rules of evidence which prevail in the courts. To render a hearing unfair the defect or the practice complained of must have been such as might have led to a denial of justice, or there must have been absent one of the elements deemed essential to due process. Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221.

In the instant case the husband was the only witness who testified against this alien whom he had brought to this country as his bride, and who had apparently been a faithful wife during her two years residence here. By his own admission he was seeking a short cut to freedom from marital responsibilities and initiated the deportation proceedings with his story to the Immigration authorities which he prefaced with the remark that he "would like to get (his) wife deported." The admission into evidence of the husband's testimony and his ex-parte statement, particularly when cross-examination was improperly limited, the admission into evidence of the purported statement of the alien taken without the aid of an interpreter, when she was without counsel and without notice of the charges against her or notice that her husband had secretly lodged complaints against her, and the refusal to permit witnesses to testify to her good character deprived this alien of the essential elements of due process of law, and rendered the hearing so unfair and unjust that the findings and order of deportation cannot be sustained.

Counsel for the plaintiff is directed to prepare, serve and lodge findings and judgment in accordance with rule 7 of the rules of this court.