RAYMOND J. RYAN AND HELEN RYAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4800–69. Filed November 15, 1976.

*Raymond G. Larroca,* for the petitioners.
*Sommers T. Brown,* for the respondent.

OPINION

DRENNEN, *Judge:* This protracted litigation, which is still in the pretrial stages, had its genesis in the petition filed by petitioners in this Court in 1969 asking the Court to redetermine the deficiencies in petitioners' joint income taxes for the years 1958 through 1962, totaling $4,375,868.48, and additions to tax for fraud for each of those years totaling $2,312,322.35.

As reflected in the opinion of this Court found in *Raymond J. Ryan,* 58 T.C. 107, on October 16, 1969, the Internal Revenue Service of the United States requested from the Federal Tax Administration of Switzerland on the basis of article XVI of the Double Taxation Convention of May 24, 1951, between Switzerland and the United States, information from the books and records of a Swiss bank on allegedly questionable dealings between that bank and petitioner Raymond J. Ryan, asserting there was reason to suspect that Ryan had defrauded the United States tax authorities. Ryan and the bank objected to this procedure but eventually, on the basis of the decision of the Swiss Federal Supreme Court in *X. v. The Federal (Swiss) Tax Administration,* 28 AFTR 2d 71–5510, 71–1 USTC par. 9435 (Dec. 23, 1970), the Swiss Federal Tax Administration apparently gave the Internal Revenue Service the information requested, or at least part thereof. Thereafter respondent sought authority from this Court to request the United States Competent Authority, as referred to in the Double Taxation Convention of 1951, to request the Swiss Competent Authority to take depositions upon written interrogatories of various officers of the Swiss bank for the purpose of obtaining evidence of petitioners' dealings with the Swiss bank in a form that would be admissible as evidence in this proceeding. This authority was granted by this Court by

order entered April 24, 1972, for reasons explained in the opinion of this Court referred to above.

When the Swiss Competent Authority attempted to obtain the evidence requested by the U.S. Competent Authority through the interrogatories, petitioners again objected and appealed to the Swiss Federal Supreme Court. However, in *X. and Y-Bank v. Confederation (Swiss) Tax Administration*, 37 AFTR 2d 76–1282, 76–1 USTC par. 9452 (May 16, 1975), the Swiss Federal Supreme Court held that while under the tax treaty information from bank records could be made available to the Internal Revenue Service under certain conditions, the treaty did not authorize the Swiss Confederation Tax Administration to furnish the Internal Revenue Service with evidence from the bank records in a form that would be admissible in evidence in a trial in the United States Courts. Pursuant to that decision the Swiss Confederation Tax Administration refused, so we are informed, to furnish the evidence requested for use in this proceeding. Activity in this proceeding was more or less suspended until the culmination of the Swiss proceedings.

On January 18, 1974, respondent served on petitioners seven interrogatories pertaining to petitioners' transactions with the Swiss bank or Swiss banking officers. Petitioners objected to the interrogatories on the grounds, inter alia, that these answers would incriminate them in violation of their rights under the fifth amendment to the U.S. Constitution. For reasons appearing in the transcript of these proceedings and discussed in the briefs, this Court by order entered May 24, 1974, granted respondent's motion to compel answers to the interrogatories and directed petitioners to answer the interrogatories. Petitioners filed a writ of mandamus with the United States Court of Appeals for the Seventh Circuit to compel the Chief Judge of the Tax Court to vacate its order, which writ was denied. Petitioners also filed with the Court of Appeals for the Seventh Circuit an appeal from the order. On May 23, 1975, the Court of Appeals dismissed petitioners' appeal for the reason that the order was not an appealable final order and suggested that the procedure for petitioners to test the validity of the Tax Court order was to fail to comply with the order and risk being held in contempt of the Court.

See *Ryan v. Commissioner,* 517 F.2d 13 (7th Cir. 1975), cert. denied 423 U.S. 892 (1975).

During the pendency of the appeal in the Seventh Circuit, the Department of Justice obtained from the United States District Court for the District of Columbia an immunity order pursuant to 18 U.S.C. sections 6002 and 6003 protecting petitioners from the use against them in any subsequent criminal proceedings of testimony which they may be required to give in the proceedings in the Tax Court. Petitioners appealed the immunity order to the United States Court of Appeals for the District of Columbia Circuit on the grounds, inter alia, that it was granted in an ex parte proceeding and that the immunity was not coextensive with their rights under the fifth amendment. On June 28, 1976, the United States Court of Appeals for the District of Columbia Circuit dismissed petitioners' appeal on the grounds that the immunity order was not an appealable final order and also suggested the contempt procedure as a vehicle for adjudication of petitioners' claims. See *In Re Ryan,* 538 F.2d 435 (D.C. Cir. 1976), 38 AFTR 2d 76-5452, 76-2 USTC par. 9518, dismissing appeal from an unreported District Court decision.

Upon conclusion of the appellate proceedings above mentioned, this Court entered an order on July 16, 1976, again directing petitioners to answer respondent's first interrogatories on or before July 28, 1976. By letter dated July 28, 1976, from their attorney, petitioners declined to comply with the Court's order. In the meantime, both petitioners filed with the Court a claim of marital privilege against either spouse testifying against the other. By order dated July 30, 1976, the Court set August 18, 1976, for hearing on: (1) Petitioners' claims of marital privilege; (2) what sanctions if any should be imposed on petitioners for failure to comply with the Court's order to answer respondent's first interrogatories; and (3) a motion filed by respondent for a protective order against being required to answer petitioners' initial interrogatories served upon respondent.[1]

---

[1] Respondent is not without fault in frustrating the Court's efforts to move this case to trial on its merits. His broad motion for a protective order against answering petitioners' initial interrogatories was filed without any effort being made to answer or object to the interrogatories. Also, as indicated in the transcripts at various times, respondent has been reluctant to disclose the sources of the information upon which his determination of the tax liability was based.

Per order dated August 24, 1976, this Court ruled as follows in respect of the matters considered at the hearing held August 18, 1976: Petitioners' claims of marital privilege were denied to the extent the claims were made to avoid answering respondent's interrogatories as directed by this Court by its orders entered May 24, 1974, and July 16, 1976; respondent was permitted to proffer his answers to his first interrogatories, which answers would be deemed admitted unless petitioners filed their own answers on or before September 10, 1976; and respondent's motion for a protective order was denied and respondent was directed to answer or object to petitioners' initial interrogatories on or before October 18, 1976.

This Court's order of August 24, 1976, further specified that if petitioners did not answer respondent's first interrogatories by September 10, 1976, petitioners would be held to be in contempt of this Court and subject to penalty of fine to be determined. Petitioners did not file answers to the interrogatories. Accordingly, pursuant to the above order and upon notice given per order dated September 17, 1976, this Court set October 1, 1976, for further hearing as to the citation for contempt and penalty therefor.

Counsel for both parties were present at the hearing on October 1, 1976, as was Raymond J. Ryan. Helen Ryan was not present but filed a waiver of her right to be present. All were given an opportunity to be heard. At the conclusion of the hearing the Court found petitioners to be in contempt of Court for failing and refusing to obey the Court's orders to answer the interrogatories. As a sanction for petitioners' civil disobedience the Court ordered that respondent's answers to the interrogatories would be taken as established as facts for purposes of this case. As punishment for contumacious disobedience of the Court's orders, an unconditional fine of $1,000 was imposed on Raymond J. Ryan.

Heretofore the Court has not stated in writing the reasons for its rulings because the rulings were considered to be interlocutory and nonappealable. We state briefly below the reasons for our various rulings in these pretrial proceedings.

We will first discuss petitioners' claim of privilege against self-incrimination afforded by the fifth amendment of the U.S. Constitution as grounds for not answering the interrogatories.

This was the principal, if not the only, ground relied upon by petitioners when the Court first directed them to answer the interrogatories by order of May 24, 1974.

There is no dispute as to the general availability of the fifth amendment privilege in civil cases, as are tax proceedings in this Court. *Kastigar v. United States,* 406 U.S. 441, 444 (1972). Cf. *John Harper,* 54 T.C. 1121 (1970); *American Cyamid Co. v. Scharff,* 309 F.2d 790, 794 (3d Cir. 1962). In the context of the instant case, however, we cannot accept petitioners' asserted fifth amendment claim of the privilege against self-incrimination as grounds for their refusal to answer respondent's first interrogatories. In our original order entered July 24, 1974, we rejected as without merit petitioners' claimed privilege against self-incrimination for reasons which reflected, inter alia, not only the innocuous character of the questions themselves but also our understanding (not challenged by petitioners) that no criminal investigations were then pending against them and that, indeed, the statute of limitations had run in respect of the years to which the interrogatories were directed. We reaffirmed this position in our more recent order of July 16, 1976. Petitioners did not establish at the time of the prior order, nor have they since, the requisite reasonable basis for apprehension of the 'hazards of incrimination.[2] See *Hoffman v. United States,* 341 U.S. 479, 486 (1951); *Marchetti v. United States,* 390 U.S. 39, 48 (1968). Indeed, while we adhere to the validity of our original order, we believe that the intervening order granting immunity to petitioners further buttresses our conclusion as to the untenability of petitioners' fifth amendment claims. Although we do not purport to pass on the validity of the immunity order since that question is not open to us at this time, we do state our disagreement with petitioners' contention that the immunity order is inadequate to protect their fifth amendment rights.

---

[2] While we of course recognize that petitioners cannot be held to such a standard of specificity as would defeat the purpose of the fifth amendment privilege, we emphasize that the above-mentioned orders of this Court are predicated on petitioners' failure to satisfy the established requirement that the risks of self-incrimination be real, not remote and speculative possibilities. *Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. 472, 486 (1972); *Hoffman v. United States,* 341 U.S. 479, 486 (1951). The dangers of criminal prosecution, by either the United States Government or a foreign authority, to which petitioners have adverted, partake only of the latter quality.

To the contrary, use immunity, that granted to both petitioners herein, is recognized to be coextensive with the fifth amendment privilege against self-incrimination. *Kastigar v. United States, supra* at 461; *United States v. Cappetto,* 502 F.2d 1351, 1359 (7th Cir. 1974), cert. denied 420 U.S. 925 (1975). To the extent that petitioners further assert the insufficiency of the immunity order to protect against incrimination of one of them by virtue of the testimony of the other, inasmuch as the immunity order was issued to both petitioners in respect of the instant tax case wherein they are jointly as well as severally liable, we do not believe that under these circumstances, the immunity order could be construed as to allow the cross-testimony of petitioners to be so used.

In challenging the validity of the immunity order, which no one else has challenged or is apt to challenge, petitioners lend support to our suspicion that they are less interested in protecting themselves from possible criminal prosecution by refusing to answer the interrogatories than they are in not disclosing evidence of their tax liability and possible fraudulent returns.

Petitioners are required by law to correctly report their taxable income. Under our self-assessment system of income taxation, petitioners are required by law to keep adequate records by which the Internal Revenue Service can check their returns. It is most important that taxpayers do this and that these records be made available to the Internal Revenue Service to ensure that each taxpayer pays his legal share of the taxes collected to operate the Government. We believe the public need for requiring voluntary disclosures of income transcends any personal right to thwart national objectives by allowing an undisclosed self-determination of possible incrimination to excuse compliance with the income tax laws.

Nor can we accept as a ground for their refusal to answer respondent's first interrogatories petitioners' claim of marital privilege against adverse spousal testimony, which privilege in general comprises the privilege of one spouse to decline to testify adversely against the other and the corelative privilege of one spouse to preclude the adverse testimony of the other.[3]

---

[3] We are not herein presented with a claim based on the other privilege in respect of the marital relation, namely, the privilege barring testimony as to confidential communications between spouses. See *Blau v. United States,* 340 U.S. 332 (1951).

While the privilege against adverse spousal testimony is generally recognized in the context of criminal proceedings, we find no basis for its application in a civil tax proceeding in this Court.

As prescribed by section 7453,[4] I.R.C. 1954, evidentiary matters in this Court are governed by the Federal Rules of Evidence which in respect of privileges provide as follows:

Rule 501. General Rule

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Applying this rule in the context of the instant situation, we perforce focus on the privilege at issue (hereinafter sometimes designated as the testimonial privilege) as it exists under Federal law and, more specifically, whether the privilege is recognized in Federal *civil* proceedings. We believe it is not.

Quite simply, although the testimonial privilege is well recognized as a matter of criminal law, see, e.g., *Hawkins v. United States*, 358 U.S. 74 (1958), we have found no authority, nor have petitioners directed us to any, which establishes the privilege in Federal civil cases.[5] For this reason alone, we are inclined to deny petitioners' claims herein; however, there are additional factors which guide our consideration and which we believe militate against recognition of the testimonial

---

[4] SEC. 7453. RULES OF PRACTICE, PROCEDURE, AND EVIDENCE.

Except in the case of proceedings conducted under section 7463, the proceedings of the Tax Court and its divisions shall be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the Tax Court may prescribe and in accordance with the rules of evidence applicable in trials without a jury in the United States District Court for the District of Columbia.

[5] We are aware that the privilege was recognized in *Gilles v. Del Guercio*, 150 F.Supp. 864 (S.D. Cal. 1957), a civil deportation case, and that the privilege has been claimed and rejected in the context of grand jury proceedings (*In Re Snoonian*, 502 F.2d 110 (1st Cir. 1974), and *United States v. George*, 444 F.2d 310 (6th Cir. 1971)), none of which we believe suffices to warrant recognition of the testimonial privilege herein.

privilege herein. For one, we are mindful of the criticism to which the testimonial privilege has been subject.[6] Further, we note that the Federal Rules of Evidence as originally proposed and submitted to Congress by the Supreme Court contained a provision (proposed rule 505) that specifically limited recognition of the testimonial privilege to criminal proceedings. Thus we are reinforced in our reluctance to extend the scope of the testimonial privilege in the absence of express authority in support thereof.

In sum, petitioners have not demonstrated that the marital privilege against adverse spousal testimony presently applies in Federal civil cases in general nor have petitioners persuaded us that in the absence of authority to that effect we would be justified in recognizing the privilege in the instant context. We therefore hold that the marital privilege against adverse spousal testimony does not apply to a civil tax proceeding in this Court; accordingly, petitioners' claims are denied and as such afford no basis for petitioners' refusal to answer respondent's first interrogatories.

In their memorandum filed August 18, 1976, and at the hearing held on that date, petitioners argued as an additional ground against the imposition of any sanctions for their noncompliance that the interrogatories at issue are the product of illegal and unconstitutional acts by the Government. To the extent that petitioners attempt thereby to invoke the protection of the fourth amendment of the U.S. Constitution, without addressing ourselves to the merits of petitioners' purported fourth amendment claim, we consider any such claim premature at this stage.[7] Indeed, the very purpose for which petitioners have propounded their initial interrogatories to respondent, and for which we have denied respondent's motion for a protective order and instead directed respondent to more precisely answer or object to the interrogatories, is to obtain sufficient information and/or evidence, which they presumably lack at present, to enable

---

[6] See, e.g., 8 Wigmore, sec. 2228, pp. 216-222 (McNaughton ed. 1961); McCormick on Evidence, sec. 66, pp. 145-146 (2d ed. 1972); Reutlinger, "Policy, Privacy, and Prerogatives: An Initial Examination of the Proposed Federal Rules of Evidence as They Affect Marital Privilege," 61 Calif. L. Rev. 1353, 1385-1386 (1973).

[7] See discussion *infra* and n. 13 related thereto.

petitioners to frame any fourth amendment issues to be raised.

In sum, it is the province of the Court to ascertain whether petitioners' refusal to answer is justified and, if not, require them to answer, *Hoffman v. United States, supra,* as we have directed by the prior orders of July 24, 1974, and July 16, 1976, which orders petitioners have disobeyed. On the basis of the foregoing, we have concluded that petitioners have failed to establish a reasonable basis to justify their repeated refusals to answer the first interrogatories propounded by respondent. By such recalcitrance, petitioners have adopted a posture of disobedience to the orders of this Court in derogation of its lawful authority. As such, we find petitioners' disobedience warrants exercise of our power to punish for contempt of the Court.

Pursuant to section 7456(d), I.R.C. 1954, the Court possesses the power to punish by fine or imprisonment, at its discretion, such contempt of its authority as disobedience or resistance to its lawful writ, process, order, rule, decree, or command.[8] See also Rule 13(c), Tax Court Rules of Practice and Procedure.[9] Specifically, in the context of a party's failure to obey an order of this Court in respect of the discovery provisions of our Rules of Practice and Procedure, Rule 104 thereof provides latitude in the sanctions which we may impose. These sanctions include: (1) An order that the matters regarding which the order was made, or any other designated facts, shall

---

[8] SEC. 7456. ADMINISTRATION OF OATHS AND PROCUREMENT OF TESTIMONY

(d) INCIDENTAL POWERS.—The Tax Court and each division thereof shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) misbehavior of any of its officers in their official transactions; or

(3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

It shall have such assistance in the carrying out of its lawful writ, process, order, rule, decree, or command as is available to a court of the United States.

See 18 U.S.C. sec. 401, which provides the power of Federal courts to punish for contempt.

[9] Rule 13. JURISDICTION.

(c) Contempt of Court. Contempt of the Court may be punished by fine or imprisonment within the scope of Code Section 7456(d).

be taken to be established for the purposes of the case in accordance with the claim of the party obtaining the order; (2) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence; or (3) an order striking out pleadings or parts thereof or staying further proceedings until the order is obeyed, or dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party. All of these sanctions may be imposed in addition to an order treating as contempt of Court the failure to obey the Court's order. Rule 104(c)(4), Tax Court Rules of Practice and Procedure.[10]

In general, a contempt of court may be either civil or criminal in nature. The distinction depends on the purpose to be served thereby; civil contempt is coercive and remedial in character whereas criminal contempt is punitive to vindicate the authority of the Court. See, e.g., *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911); *Shillitani v. United States*, 384 U.S. 364 (1966). Thus,

When the duly issued orders of a court, in the exercise of its jurisdiction, are disobeyed, the recalcitrant may be cited, according to the circumstances, for criminal contempt or civil contempt or both. The sanction to be imposed is dictated by the purposes to be served. If the purpose is to punish defiance of judicial authority, criminal contempt is involved. The beneficiaries there are the courts and the public interest.

Even when a court issues an order which it had not the power or authority to issue, in matters of criminal contempt the disobedient party may be held and appropriately punished. This is true if the order is later found to have been invalid, even to the extent of infringing constitutional rights, *Maness v. Meyers,* 1975, 419 U.S. 449, * * * *United States v. Dickinson,* 5 Cir. 1972, 465 F.2d 496, on remand, D. C., 349 F.Supp. 227, affirmed on second appeal, 5 Cir., 476 F.2d 373, *cert. denied,* 414 U.S. 979, * * *

On the other hand, where the purpose is to *compel* obedience of the court order or to compensate the litigant for injuries sustained from the disobedience, civil contempt is proper. In civil cases, the beneficiary of civil contempt is the individual litigant. See, *e.g., Gompers v. Bucks Stove and Range Company,* 1911, 221 U.S. 418, * * * *Salvage Process Corporation v. Acme Tank Cleaning Process Corporation,* 2 Cir. 1936, 86 F.2d 727; *Rivers v.*

---

[10] Rule 104. ENFORCEMENT ACTION AND SANCTIONS.

(c) Sanctions: * * *

(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of the Court the failure to obey any such order.

*Miller,* 5 Cir., 1940, 112 F.2d 439; *Nelson v. Steiner,* 7 Cir. 1960, 279 F.2d 944; *Southern Ry. Co. v. Lanham,* 5 Cir. 1968, 403 F.2d 119. [*Norman Bridge Drug Co. v. Banner,* 529 F.2d 822, 827 (5th Cir. 1976).]

In view of the instant circumstances which we have outlined, we conclude that we are justified in applying both the sanction prescribed under Rule 104(c)(1) as well as a criminal sanction for petitioners' contumacious disobedience. Petitioners, by their repeated refusals to answer respondent's first interrogatories, have frustrated this Court's efforts to move this case to trial on its merits. In furtherance of this objective, we impose the following sanction for petitioners' civil disobedience of this Court's orders: That respondent's proffered answers to his first interrogatories shall be taken to be established as facts for the purpose of this case. Since by virtue of this sanction, answers to the interrogatories will be provided, there remains no coercive purpose to be served, hence we impose no additional civil contempt sanction by way of conditional fine or imprisonment.

In addition, as punishment for the criminal disobedience of the Court's orders, we impose on petitioner Raymond J. Ryan an unconditional fine of $1,000. We intend thereby to impress on petitioner, who we believe to be the moving force behind petitioners' disobedience, the necessity of obeying the lawful orders of this Court. We will not countenance such conduct which has resulted in both lengthy delay in the progress of this case and burden on the various courts that have to date been involved thereby.[11]

Lastly, we turn to respondent's motion for a protective order. On July 19, 1976, respondent filed a motion for a protective order against responding to petitioners' initial interrogatories to respondent. Argument on the motion was heard at the aforementioned hearing held August 18, 1976. While we recognize that respondent's task may be extended and potentially onerous, we believe that the better procedure

---

[11] In fixing the amount of the fine, we have considered petitioner's financial status as well as the overall circumstances for which we have found punishment warranted. See *United States v. United Mine Workers,* 330 U.S. 258, 304 (1947). Consequently, while we recognize that the fine of $1,000 exceeds the $500 limitation for petty offenses as defined by 18 U.S.C. sec. 1(3), we believe that the fine, being neither excessive nor otherwise onerous, may be imposed without jury trial. See *Muniz v. Hoffman,* 422 U.S. 454 (1975); Rule 42(b), Federal Rules of Criminal Procedure.

to be followed by respondent in respect of these interrogatories is that contemplated by Rule 71(c), Tax Court Rules of Practice and Procedure, which requires that each interrogatory be either answered or objected to specifically. Cf. *John W. Pearsall*, 64 T.C. 94 (1974); see also *Flood v. Margis*, 64 F.R.D. 59, 61–62 (1974). This is particularly appropriate in light of petitioners' assertion in their memorandum filed August 18, 1976, entitled "Petitioners' Request that No Sanctions be Imposed upon Them and Other Relief" in which they allege that the notice of deficiency upon which this case is based and the interrogatories here involved are based on illegally obtained evidence or leads obtained from illegally obtained evidence.[12] Accordingly, as per our order entered August 24, 1976, we have denied respondent's motion and directed respondent to answer or object to the interrogatories propounded on or before October 18, 1976. Rule 103(b), Tax Court Rules of Practice and Procedure.

*An appropriate order has been entered.*

---

[12] By this we do not mean to infer that we are ruling one way or the other on whether evidence illegally obtained by Federal officers or agents will be excluded in the trial of a civil tax fraud case in this Court under the exclusionary rule of the fourth amendment. See *United States v. Janis*, 428 U.S. 433 (1976).