WILBUR FREDERICK SCHOLLE and ESTATE OF MARILYN JANE SCHOLLE, Deceased, WILBUR FREDERICK SCHOLLE, Personal Representative, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scholle v. Commissioner
Docket No. 645-81.
United States Tax Court
T.C. Memo 1982-267; 1982 Tax Ct. Memo LEXIS 477; 43 T.C.M. (CCH) 1367; T.C.M. (RIA) 82267; May 17, 1982. Wilbur Frederick Scholle, pro se. Robert L. Archambault, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent, by separate statutory notices of deficiency, determined deficiencies in petitioners' Federal income taxes for the calendar year 1978 and additions to the tax under various sections of the Internal Revenue Code [1] as follows: *478 Amount of Tax
Additions to Tax
Petitioner
Deficiency § 6651(a) § 6653(a) § 6653(b) § 6654
Wilbur Frederick Scholle
$ 4,558.00
[2]
[2]
$ 2,279.00
$ 128.64
Marilyn Jane Scholle
705.00
$ 137.93
$ 35.25
The issues for decision by the Court are: (1) Whether petitioners had taxable income and underpaid their taxes for the year 1978; (2) Whether petitioners, having filed a "Fifth Amendment" tax return that contained no figures or information from which their tax liability could be computed, are entitled to be treated as having filed a joint return or whether respondent properly computed their tax on the basis of married persons filing separately; (3) Whether petitioner Marilyn Jane Scholle is liable for the addition to tax under section 6651(a) for failure to file a return and pay the tax due and for the addition to tax under section *479 6653(a) for negligence or intentional disregard of rules and regulations; (4) Whether any part of the underpayment of tax by petitioner Wilbur Frederick Scholle was due to fraud so that he is liable for the addition to tax under section 6653(b); and (5) Whether petitioner Wilbur Frederick Scholle is liable for the addition to tax under section 6654 for failure to pay estimated tax. FINDINGS OF FACT Most of the facts in this case have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time they filed their petition in this case, petitioners were husband and wife and resided in Axtell, Nebraska. [3] For the years 1975, 1976, and 1977, petitioners filed joint Federal income tax returns on which they reported the wages reflected on their Forms W-2, Wage and Tax Statements, and claimed eight exemptions (two personal exemptions, and six dependency exemptions for their six children). For the year 1978 petitioners filed what is sometimes referred to as a "Fifth Amendment" tax return. *480 For 1978 petitioners signed and filed a Form 1040, U.S. Individual Income Tax Return, that contained their typed names, address, filing status, and personal and dependency exemption information. That Form 1040 did not include their social security numbers or their occupations, the words "Object--self-incrimination" being typed on each line calling for such information. That Form 1040 did not contain any figures or any other financial information relating to their incomes from which their tax liability could be computed. Their Forms W-2 were not attached to that Form 1040, and each line that was filled in contained the typed words "Object--self-incrimination" or the word "None." [4] There was typed at the bottom of page 2 of the Form 1040 the statement "For full explanation of self-incrimination objection see nine pages attached." Those nine pages cited excerpts from various Supreme Court opinions involving the Fifth Amendment to the United States Constitution. [5] That Form 1040 was the only tax return petitioners filed for the taxable year 1978. *481 During the year 1978 both petitioners worked at the Bethphage Mission, Inc., in Axtell, Nebraska. Mr. Scholle was employed as a maintenance supervisor and Mrs. Scholle as a secretary. In 1978 petitioners had six dependent children and no other dependents. Mrs. Scholle, who had been essentially a homemaker in earlier years, gradually increased her working time outside of the home each year from 1976 to 1978, but apparently she was still employed less than full time in 1978. In 1978 Mr. Scholle was paid $ 18,955.26 and Mrs. Scholle was paid $ 6,591.17. The Bethphage Mission issued W-2's to them reflecting these wages, but, for reasons which will be discussed below, the employer withheld only nominal amounts of Federal income tax from their wages. For each of the years 1975 through 1977, petitioners claimed eight personal and dependency exemptions. No Federal income tax was withheld from Mr. Scholle's wages in either 1975 or 1976, but the record does not indicate how many withholding allowances he had claimed prior to March of 1976. On March 22, 1976, Mr. Scholle filed a Form W-4, Employee's Withholding Allowance Certificate, with his employer claiming a marital status of married *482 and nine allowances, certifying that to the best of his knowledge and belief "the number of withholding allowances claimed on this certificate does not exceed the number to which I am entitled." Over this three-year period from 1975 through 1977, petitioners' wages, other income, adjusted gross income, and deductions for each year, as reported on their tax returns, were as follows: Adjusted Gross
Year
Wages
Other Income
Income
Deductions
1975
$ 13,588.16
$ 1,179.77
$ 14,767.93
$ 1,812.01
1976
15,677.39
1,031.54
16,708.93
2,673.43
1977
18,530.38
488.50
19,018.88
4,544.38
For 1975 the itemized deductions petitioners claimed on their Schedule A ($ 1,812.01) were less than the standard deduction, and respondent allowed the standard deduction (16% of adjusted gross income) amounting to $ 2,362. The $ 2,673.43 deducted for 1976 was the standard deduction. For 1977 petitioners' itemized deductions totaled $ 4,544.38. After deducting the zero bracket amount of $ 3,200 (formerly the standard deduction) that was built into the tax tables that year, petitioners had excess itemized deductions of $ 1,344.38 and and reduced their adjusted *483 gross income by that figure. In each of the three years 1975 through 1977, petitioners' withheld taxes were less than their tax liability, although the withholding closely approximated their tax liability in 1977. In 1975, no Federal income tax was withheld and petitioners' tax liability for the year was $ 838. In 1976, Federal income taxes of $ 102.64 were withheld from Mrs. Scholle's wages, and petitioners' Federal tax liability for the year was $ 1,106. In 1977, total Federal income taxes of $ 1,133.62 were withheld from petitioners' wages, and their Federal tax liability for the year was $ 1,147.46. On April 24, 1978, Mr. Scholle filed a new Form W-4 with his employer claiming married status and 26 withholding allowances. He signed the following certification: Under penalties of perjury, I certify that the number of withholding exemptions and allowances claimed on this certificate does not exceed the number to which I am entitled. If claiming exemption from withholding, I certify that I incurred no liability for Federal income tax for last year and that I anticipate that I will incur no liability for Federal income tax for this year. Mrs. Scholle, who had claimed *484 married status and zero allowances on the Form W-4 she had signed on August 10, 1977, also signed a new Form W-4 on April 24, 1978. She claimed married status and 10 withholding allowances, signing the same certification as her husband had. As a result of the W-4's signed by petitioners on April 24, 1978, Bethphage Mission withheld only $ 430.18 in Federal income taxes from Mr. Scholle's wages and $ 153.29 from Mrs. Scholle's wages in 1978. The withholding from January 1 through April 24 was based on zero withholding allowances for Mrs. Scholle and nine withholding allowances for Mr. Scholle. No taxes were withheld after April 24, 1978. On October 18, 1979, petitioners were advised that they were being audited for the year 1978. Respondent's revenue agent scheduled an appointment with petitioners and twice rescheduled it, but a meeting apparently never took place. Petitioners were requested during the audit to furnish their books and records, including, among other things, bank statements, deposit slips, and canceled checks. Petitioners never furnished any records or documents at any time during the audit. Mr. Scholle wrote a number of letters advancing legal arguments *485 about the Fifth Amendment and demanding that respondent furnish him copies of laws, regulations, and court opinions proving that his constitutional arguments were wrong. [6] Respondent advised petitioners that the return filed by them was not valid because it did not contain information required to comply with the Internal Revenue Code requirements. When petitioners failed to furnish any figures or information as to their income from which their tax could be computed, respondent obtained information from third-party sources and determined their tax liability upon the basis of the wages shown on the W-2's issued by Bethphage Mission. Respondent imposed the fraud addition and the addition for failure to pay estimated tax upon Mr. Scholle. Respondent imposed the negligence and delinquency additions upon Mrs. Scholle. On August 10, 1980, respondent issued a separate statutory notice to each spouse, reflecting those determinations and computing the tax upon the basis of married persons filing separate returns. Respondent allowed each spouse a personal exemption, but disallowed *486 the six dependency exemptions. [7]
After the joint petition was filed in this case, respondent's appeals officer and later respondent's counsel attempted to meet with petitioners and to obtain the documentation that had been sought earlier. Mrs. Scholle had died by this time. Mr. Scholle apparently never attended any of the meetings or conferences, except perhaps just before the trial, and never furnished any of the documentation requested. Mr. Scholle never consulted an attorney or an accountant at any time before filing the "Fifth Amendment" tax return for 1978 nor has he consulted an attorney or an accountant since doing so. OPINION Petitioners have the burden of proof in regard to the deficiencies determined by respondent. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners presented no evidence and relied entirely upon frivolous Fifth Amendment claims, as will be *487 discussed below. We sustain respondent's determination of the deficiencies. For the taxable year 1978 petitioners filed a Form 1040 that contained no figures or other financial information relating to their income or deductions from which their tax could be computed. It is well established that such a Form 1040 does not constitute an income tax return. United States v. Edelson,604 F. 2d 232, 234 (3d Cir. 1979); United States v. Johnson,577 F. 2d 1304, 1311 (5th Cir. 1978); United States v. Klee,494 F. 2d 394, 397 (9th Cir. 1974); United States v. Daly,481 F. 2d 28, 29 (8th Cir. 1973); United States v. Porth,426 F. 2d 519, 523 (10th Cir. 1970); Jarvis v. Commissioner,78 T.C. No. 45 (April 22, 1982); Reiff v. Commissioner,77 T.C. 1169 (1981) and cases cited therein. Petitioners having failed to file a tax return, respondent determined their income from the W-2's issued by their employer, computed their tax on the basis of married persons filing separately, and issued a separate statutory notice to each spouse. Petitioners now ask to have their tax *488 deficiency computed on the basis of a joint return and the rates for married persons filing a joint return. It is well established that where no return is filed and respondent issues the statutory notice on the basis of married individuals filing separately, the spouses cannot, after filing a petition in this Court, elect the benefits of a joint return. Thompson v. Commissioner,78 T.C. No. 38 (April 8, 1982); Richardson v. Commissioner,72 T.C. 818, 826 (1979); Durovic v. Commissioner,54 T.C. 1364, 1401-1402 (1970), affd. on this issue 487 F. 2d 36, 41 (7th Cir. 1973), cert. denied 417 U.S. 919 (1974). [8]
*489 Furthermore, Mrs. Scholle having failed to file a tax return, the addition to tax under section 6651(a) for failure to file a return and to pay the tax due, which respondent determined against her, must be sustained. In this case, she (or her personal representative on her behalf) offered no evidence to show that the failure to file was due to reasonable cause and not due to willful neglect within the meaning of section 6651(a). The burden of proof rested with her to make any such showing ( Fischer v. Commissioner,50 T.C. 164, 177 (1968)); and since she failed to carry her burden, we must sustain respondent's imposition of the delinquency addition. In regard to the negligence addition under section 6653(a), the burden of proof was also upon Mrs. Scholle (or her personal representative) to establish that the underpayment of tax was not due to negligence or intentional disregard of rules and regulations. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). She (or her personal representative) failed to sustain that burden, and we must uphold respondent's determination of the negligence addition. It is not clear whether Mr. Scholle intended *490 his Fifth Amendment arguments to be considered on the question of the delinquency and negligence additions imposed upon his wife or just on the question of the fraud addition imposed upon himself. However, his Fifth Amendment arguments do not help him on either issue. Mr. Scholle insists that the Form 1040 he and his wife filed for 1978 and his refusal to present any evidence at the trial constituted a proper reliance upon the right against self-incrimination under the Fifth Amendment to the United States Constitution. We disagree. As the Court repeatedly advised Mr. Scholle throughout the trial, he must make some minimal factual showing that he has some real basis to fear self-incrimination. Petitioner made no showing at all. The Court is satisfied that petitioner does not have any real basis to fear self-incrimination and that any possible danger of self-incrimination is so remote and so speculative that it cannot support a Fifth Amendment claim in this case. McCoy v. Commissioner,76 T.C. 1027, 1029 (1981), on appeal to 9th Cir. (Sept. 15, 1981); Burns v. Commissioner,76 T.C. 706 (1981); Wilkinson v. Commissioner,71 T.C. 633, 638 (1979); *491 Ryan v. Commissioner,67 T.C. 212, 217 and n.2 (1976), affd. 568 F. 2d 531, 539 (7th Cir. 1977), cert. denied 439 U.S. 820 (1978); Roberts v. Commissioner,62 T.C. 834, 838 (1974). Mr. Scholle says these cases are distinguishable because they involved tax protestors whereas he insists he is not a tax protestor. However, the law in regard to Fifth Amendment claims is the same for tax protestors as for any other taxpayer, and vice versa. Even in a criminal case involving prosecution for willful failure to file a tax return, the courts have ruled that there is no Fifth Amendment privilege negating the duty to file a tax return. United States v. Edelson,supra.Mr. Scholle's bald assertion of a blanket Fifth Amendment claim on the Form 1040 and at the trial is not sufficient. [9] Petitioners did not file a tax return for 1978, and their failure to file was "willful" as the Supreme Court has defined that term, meaning a "voluntary, intentional violation of a known legal duty…." United States v. Pomponio,429 U.S. 10, 12 (1976). *492 The next issue is the fraud addition imposed upon petitioner Wilbur Frederick Scholle (hereinafter referred to as petitioner). Respondent has the burden of proving fraud by clear and convincing evidence. Rule 142(b), Tax Court Rules of Practice and Procedure; sec. 7454(a); Miller v. Commissioner,51 T.C. 915, 918 (1969). Respondent must show that petitioner intended to evade taxes which he knew or believed he owed, by conduct intended to conceal, mislead, or otherwise prevent collection of such taxes. Stoltzfus v. United States,398 F. 2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F. 2d 366, 377 (5th Cir. 1968), affg. a Memorandum *493 Opinion of this Court; Acker v. Commissioner,26 T.C. 107, 112-113 (1956). Fraud is a factual question to be determined on the basis of the entire record. Mensik v. Commissioner,328 F. 2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Fraud can seldom be established by direct proof of the taxpayer's intention, and therefore petitioner's entire course of conduct can be relied upon to establish such fraudulent intent by circumstantial evidence. Spies v. United States,317 U.S. 492 (1943); Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,supra at 105-106. Based upon all the facts, we conclude that respondent has carried his burden of proof in this case. Besides petitioner's willful failure to file a return and his frivolous Fifth Amendment claims, discussed above in connection with the negligence and delinquency additions, there are affirmative acts of fraud such as his filing a false Form W-4 claiming 26 withholding allowances and his failure to cooperate during the audit.
*494 It has been held that filing false W-4's is an affirmative act of fraud. Nielson v. Commissioner,T.C. Memo. 1980-453; Cook v. Commissioner,T.C. Memo. 1980-415; Forbush v. Commissioner,T.C. Memo. 1979-214. In the circumstances of this case, we are satisfied that petitioner falsely certified the W-4 claiming 26 withholding allowances and that that false W-4 was part and parcel of petitioner's effort to evade payment of income taxes. Without repeating the legal discussion above in regard to petitioner's Fifth Amendment claims, we must consider petitioner's entire course of conduct in the light of the contradictory and conflicting explanations of his Fifth Amendment claims. We note that petitioner suggested that the items in regard to which he feared possible incrimination related to his deductions. However, petitioner also claimed the Fifth Amendment in answer to most of the questions involving amounts and sources of income, including: wages; business income or loss; capital gain or loss; net gain or loss from Supplemental Schedule; *495 pensions, annuities, rents, royalties, partnerships; and other income. In regard to deductions, however, petitioner insisted that he had adequate deductions to eliminate any tax liability but that he could not reveal the nature of the deductions because of his fear of self-incrimination. The Court did not believe him. The deductions petitioner and his wife had for 1975 and 1976 were less than the standard deduction and for 1977 were only $ 1,344.38 above the zero bracket amount. Petitioner is suggesting that his seven personal and dependency exemptions ($ 7,000) and deductions for 1978 were going to exceed his salary of $ 18,955.26, which would mean itemized deductions of at least $ 11,955.26. The Court found petitioner's testimony inherently incredible. Moreover, this is not one of those exceptional cases where respondent has the burden of disproving the existence of unclaimed deductions that might nullify the unreported gross income. See Richardson v. Commissioner,264 F. 2d 400, 404-405 (4th Cir. 1959); Rivera v. Commissioner,T.C. Memo. 1979-343. More importantly, however, petitioner insisted that the number of withholding exemptions *496 he claimed each year was designed just to cover his deductions so he would not owe more taxes and so he would also not have too much tax withheld by his employer. The Court did not believe petitioner's testimony, and his explanation is also not borne out by the facts. For each of the three years preceding the year in issue, the amount of tax withheld from both spouses' salaries totaled less than the amount of tax owed each year. In 1975 no tax was withheld and petitioner and his wife owed $ 838 in tax that year. In 1976 no tax was withheld from petitioner's salary and only $ 102.64 was withheld from his wife's salary, yet they owed Federal taxes of $ 1,106 for the year. In 1977 the withholding almost approximated their tax liability, but still fell a few dollars short. For that year Mrs. Scholle was claiming zero withholding allowances and petitioner was claiming nine withholding allowances. Even though the spouses had not had enough taxes withheld in 1977, for 1978 they claimed a total of 36 withholding allowances which had the effect of hatling all further withholding of taxes from their salaries. As to the 10 allowances claimed by Mrs. Scholle, that number may be reasonable *497 since it is only one more than petitioner had claimed the preceding year when almost enough tax had been withheld. In any event, respondent did not determine any fraud as to her.However, there is no explanation for the 26 allowances claimed by petitioner. The Court did not believe his testimony that he was just trying to claim the number that would properly reflect his tax liability. [10]
Finally petitioner was wholly uncooperative throughout the audit. He never produced any of the records or documents that were requested. He did nothing more than repeat his frivolous Fifth Amendment claims, both during the audit and at trial. The Court did not believe his wholly unsupported conclusory statement that he acted *498 "in good faith, honestly, legally, and no attempt of fraud or deception." The Court is satisfied that petitioner was not interested in knowing the proper scope of his Fifth Amendment rights but simply wished to use the Fifth Amendment to evade payment of his income taxes. The Fifth Amendment cannot be so readily transmogrified into such a tax shelter.We sustain respondent's fraud determination. The last issue involves the addition to tax under section 6654 for failure to pay estimated tax. Respondent determined this addition as to petitioner Wilbur Frederick Scholle. When there has been a failure to pay or an underpayment of estimated tax, this particular addition is mandatory and no inquiry is made as to possible reasonable cause or lack of willful neglect.[11]Bagur v. Commissioner,66 T.C. 817, 824 (1976); Durovic v. Commissioner,supra at 1400; Estate of Ruben v. Commissioner,33 T.C. 1071, 1072 (1960). There was an underpayment of estimated tax by petitioner, and the addition was properly determined. Since petitioner failed *499 to file a tax return for the year, the deficiency procedures properly applied to the section 6654 addition in this case.Sec. 6659(b)(2), as in effect in 1978 (redesignated as section 6660(b)(2) by Pub. L. 97-34, 95 Stat. 172, 341). That section provides that if no return is filed, an addition to tax under section 6654 is assessed, collected, and paid in the same manner as taxes. To reflect respondent's concessions as to the dependency exemptions, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the calendar year 1978, unless otherwise indicated.↩
2. In his answer, respondent asserted against petitioner Wilbur Frederick Scholle, as an alternative to the fraud addition under section 6653(b), a delinquency addition under section 6651(a)↩ in the amount of $ 1,031.95 and a negligence addition under section 6653(a) in the amount of $ 227.90.
3. Marilyn Jane Scholle died on June 11, 1981, and her husband has been substituted as the personal representative of her estate.↩
4. Thirty lines contained the word "None" or ditto marks under the word "None." Seventeen lines contained the words "Object--self-incrimination," including the lines for wages; business income or loss; capital gain or loss; net gain or loss from Supplemental Schedule; pensions, annuities, rents, royalties, partnerships; and other income. ↩
5. That same nine-page document was again submitted to respondent during the audit, was attached to the amended petition that was filed at the trial, and was again offered by Mr. Scholle and received by the Court as his brief at the conclusion of the trial. The copy attached to the Form 1040 is signed by Mr. and Mrs. Scholle, and the other copies have blank signature lines, but except for that all of these copies of the nine-page document are exactly the same.↩
6. Mr. Scholle apparently now concedes that respondent had no obigation to perform legal research for him.↩
7. Respondent now concedes that petitioner Wilbur Frederick Scholle is entitled to six dependency exemptions for the taxable year 1978.↩
8. See also Lee v. Commissioner,T.C. Memo. 1981-26; Walker v. Commissioner,T.C. Memo. 1980-146; Armaganian v. Commissioner,T.C. Memo. 1978-305; Yetman v. Commissioner,T.C. Memo. 1978-52; Boyle v. Commissioner,T.C. Memo. 1975-307; Dritz v. Commissioner,T.C. Memo. 1969-175, affd. per curiam 427 F. 2d 1176↩ (5th Cir. 1970).
9. He argues that his is not the usual "blanket" Fifth Amendment↩ claim because he invoked it in response to only 13 questions on the Form 1040 and answered "outright" 33 questions. That is a frivolous argument. The "outright" answers were the word "None," but every relevant question relating to petitioners' sources or amounts of income and deductions was answered "Object--self-incrimination."
10. If we consider both spouses together, they would be suggesting that their eight personal and dependency exemptions ($ 8,000) and their deductions would exceed their combined salary of $ 25,546.43 for 1978. That would mean deductions of at least $ 17,546.43, which we find inherently incredible in the light of the facts of record. Even more incredible are the projections that the 36 withholding allowances conjure up: $ 8,000 exemptions plus $ 28,000 in deductions.↩
11. Even if there were a statutory provision for such inquiry, here we would find there was no reasonable cause and that the failure to pay estimated tax was due to willful neglect.↩