ALDI C. FUHRMANN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RespondentFuhrmann v. CommissionerDocket No. 20200-80.United States Tax CourtT.C. Memo 1982-255; 1982 Tax Ct. Memo LEXIS 490; 43 T.C.M. (CCH) 1330; T.C.M. (RIA) 82255; May 6, 1982. Aldi C. Fuhrmann, pro se. Kay L. Windram, for the respondent. PARKERMEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to the tax under section 6653(b) of the Internal Revenue Code1 as follows: Amount ofAdditions to the TaxYearTax Deficiencies 2(Section 6653(b))1975$ 3,681.00$ 1,840.5019765,136.002,568.0019776,083.003,041.50*492 In an amendment to his answer, respondent asserted, as an alternative to the fraud additions, the delinquency additions under section 6651(a) and the negligence additions under section 6653(a). The issues for decision by the Court are: (1) Whether petitioner had taxable income for the years 1975, 1976, and 1977, and underpaid his taxes each year; (2) Whether any part of the underpayment of taxes each year was due to fraud within the meaning of section 6653(b); (3) Whether petitioner's*493 failure to file tax returns was due to reasonable cause and not due to willful neglect within the meaning of section 6651(a); and (4) Whether any part of petitioner's underpayment of tax each year was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time he filed his petition with this Court, petitioner resided at 34341 Aztec Drive, Westland, Michigan. During the years 1975, 1976, and 1977, petitioner was employed by the General Motors Corporation as a salaried employee, working for the Fisher Body Division. Petitioner is a high school graduate and attended business school for two years. He had served in the military and had worked for another automobile company, before going to work for General Motors in 1954. During the years 1973 through 1977, petitioner earned and received wages from General Motors, as follows: YearWagesFederal Taxes Withheld1973$ 14,245.75$ 2,531.00197415,460.782,889.12197516,464.442,903.43197620,291.74101.17197722,451.653,030.28These amounts were reflected*494 on the Forms W-2, Wage and Taxes Statements, that General Motors issued to petitioner. For the years 1973 and 1974, petitioner and his then wife filed joint Federal income tax returns that reported his income from General Motors. Those returns were prepared by a Certified Public Accountant. During those years, there was on file with General Motors a Form W-4, Employee's Withholding Exemption Certificate, dated April 20, 1966, on which petitioner had claimed a "married" filing status and zero exemptions. On January 13, 1976, petitioner signed a Form W-4E, Exemption from Withholding (of Federal Income Tax). Petitioner signed the employee's certification statement on that form that read as follows: Under penalties of perjury, I certify that I incurred no liability for Federal income tax for 1975 and that I anticipate that I will incur no liability for Federal income tax for 1976. Thereafter, based on that Form W-4E, General Motors ceased withholding Federal income taxes from petitioner's wages. On or about April 13, 1976, petitioner signed an filed a Form 1040, U.S. Individual Income Tax Return, for 1975. That Form 1040 contained petitioner's typed name, address, and social*495 security number (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), and a check mark for filing status (single). That Form 1040 contained no figures and no other information relating to petitioner's income from which the tax could be computed. Written across that Form 1040 in large block hand-printed letters was the underscored word "IMPOSSIBLE." Although this Form 1040 was signed by petitioner, the declaration under penalties of perjury above the signature line had been crossed out. By letter dated May 17, 1976, petitioner was advised by respondent that the Form 1040 filed by him for the taxable year 1975 was "not acceptable as an income tax return, because it does not contain information required by law, and it does not comply with Internal Revenue Code Requirements." Respondent's letter spelled out the pertinent Code requirements and quoted the language from United States v. Dlay,481 F. 2d 28 (8th Cir. 1973) and United States v. Porth,426 F. 2d 519 10th Cir. 1970) to the effect that a document such as petitioner filed does not constitute a "return." For the taxable year 1976, petitioner signed and filed a Short Form 1040A, U.S. Individual Income Tax Return. Again the declaration*496 under penalties of perjury above his signature had been blocked out. That Form 1040A contained petitioner's typed name, address, and social security number. In the lines for occupation, filing status, exemptions, and other dependents, there was typed in "4th Amendment." In all other lines where any entry was made, there was typed in "5th Amendment." That Form 1040A did not contain any figures or other information relating to petitioner's income from which the tax could be computed. That Form 1040A was undated, and the record does not indicate when that document was filed by petitioner. However, by letter dated June 30, 1977, respondent again advised petitioner that the Form 1040A that he had filed was not acceptable as an income tax return because it did not contain the information required by law and did not comply with the Internal Revenue Code requirements. When an employee filed a Form W-4E, as petitioner had done on January 13, 1976, General Motors normally questioned the employee about the claimed exemption from tax. In petitioner's case, through an administrative error or oversight, petitioner was not called in and questioned. The Form W-4E was simply processed. As*497 a result of the filing of that Form W-4E by petitioner, no Federal income tax was withheld from petitioner's salary after the January 15, 1976 pay period and up until the May 15, 1977 pay period. Consequently, for the taxable year 1976, only $ 101.17 in Federal income tax was withheld from petitioner's wages. However, about January of 1977, General Motors discovered its oversight and following its customary practice or policy called petitioner in to explain the basis for his claimed exemption from Federal income tax. When petitioner explained that he believed he had no Federal income tax liability because he had not been paid in gold or silver, General Motors did not accept that explanation and advised petitioner that that was not a valid basis for exemption from taxes. Petitioner never filed another Form W-4 with General Motors and ultimately around mid May of 1977, General Motors resumed withholding taxes from petitioner's wages based on the Form W-4 filed in 1966. In January of 1977, when the General Motors personnel officer interviewed petitioner as to the basis for his claiming to be exempt from Federal income taxes, that official immediately rejected petitioner's gold and*498 silver argument. Withholding of taxes from petitioner's salary was resumed forthwith. However, the personnel officer for some reason decided to refer the matter to the corporate legal and tax staff for a formal opinion, and the renewed withholding was again halted after just one pay period and the withheld taxes were refunded to petitioner by General Motors. After the corporate legal and tax staff advised the personnel office and petitioner that petitioner's argument was not valid, withholding of tax was again resumed as of the pay period of May 15, 1977. However, in May of 1977, petitioner attended the General Motors stockholders' meeting in Detroit and again protested that action to corporate officials. The corporate officers to whom the complaints were made again looked into the matter and again advised petitioner that the withholding was proper. For the taxable year 1977, petitioner filed no Federal income tax return of any kind. Petitioner has since renewed his efforts to get General Motors to cease witholding Federal taxes from his wages, the last such effort occurring shortly before the trial of this case. On audit respondent determined that petitioner had not filed*499 valid tax returns for each of the years 1975, 1976, and 1977. Respondent determined petitioner's Federal income tax liability based on his W-2 wages from General Motors, the standard deduction and one personal exemption. Respondent also determined fraud additions under section 6653(b). ULTIMATE FINDINGS OF FACT Petitioner Failed to file tax returns for 1975, 1976, and 1977. Petitioner received taxable income each year from General Motors and underpaid his taxes each year. Petitioner's underpayment of taxes each year was due to fraud. OPINION Although respondent has the burden of proof as to the fraud issues, as will be discussed below, petitioner has the burden of establishing that respondent's determinations of the tax deficiencies are incorrect. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). Petitioner presented no evidence and relied instead upon various frivolous constitutional and legal arguments, 3 including a blanket assertion of Fifth Amendment rights against self-incrimination. The Court is satisfied that petitioner does not have any reasonable basis to fear self-incrimination, and that any*500 possible danger of self-incrimination is so remote and so speculative that it cannot support a Fifth Amendment claim in this case. 4McCoy v. Commissioner,76 T.C. 1027, 1029 (1981), (on appeal to 9th Cir. (Sept. 15, 1981)); Burns v. Commissioner,76 T.C. 706 (1981); Wilkinson v. Commissioner,71 T.C. 633, 638 (1979); Ryan v. Commissioner,67 T.C. 212, 217 (1976), affd. 568 F. 2d 531, 539 (7th Cir. 1977), cert. denied 439 U.S. 820 (1978); Roberts v. Commissioner,62 T.C. 834, 838 (1974). *501 Respondent determined the tax deficiencies simply on the basis of petitioner's wages as shown on his W-2's, the standard deduction, and one personal exemption. In the absence of any evidence as to any possible employee business expenses, itemized deductions, exclusions, or tax credits to which petitioner may have been entitled, we have no basis on which to determine that petitioner owes any lesser amount of tax. On this record, we must sustain respondent's determination. Respondent has the burden of proving fraud by clear and convincing evidence. Rule 142(b), Tax Court Rules of Practice and Procedure; sec. 7454(a); Miller v. Commissioner,51 T.C. 915, 918 (1969). Respondent must show that petitioner intended to evade taxes which he knew or believed he owed, by conduct intended to conceal, mislead, or otherwise prevent collection of such taxes. Stoltzfus v. United States,398 F. 2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F. 2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107, 112-113 (1956). Fraud is a factual question to be determined on the*502 basis of the entire record. Mensik v. Commissioner,328 F. 2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Fraud can seldom be established by direct proof of the taxpayer's intention, and therefore petitioner's entire course of conduct can be relied upon to establish such fraudulent intent by circumstantial evidence. Spies v. United States,317 U.S. 492 (1943); Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,supra at 105-106. Based on all the facts in this case, we conclude that respondent has established fraud by clear and convincing evidence. Petitioner, although aware of his taxable income and his obligation to file tax returns and to pay income taxes, failed to do so.Petitioner is not an uneducated or unintelligent person, and his educational background was in business. Petitioner and his then wife filed tax returns for 1973 and 1974 and reported thereon petitioner's salary from the Fisher Body Division of the General Motors Corporation. His subsequent course of conduct must be viewed*503 against the background of his knowledge and his prior actions of filing his tax returns and paying his taxes. For the years before the Court, petitioner either filed no return at all or filed a Form 1040 or 1040A that contained no financial information. Those essentially blank forms for 1975 and 1976 did not constitute "returns." Jarvis v. Commissioner,78 T.C. No. 45 (April 22, 1982); Reiff v. Commissioner,77 T.C. 1169 1177-1180 (1981); United States v. Daly,supra; United States v. Porth,supra. Petitioner did not sign and verify the Form 1040 or 1040A under penalties of perjury. Cupp v. Commissioner,65 T.C. 68, 73, 78-79 (1975), affd. without published opinion 556 F. 2d 1207 (3d Cir. 1977). In fact petitioner crossed out the declarations under penalties of perjury. Petitioner did not provide sufficient data from which respondent could compute and assess his tax liability, which is the very essence of a proper "return." Jarvis v. Commissioner,supra, and Reiff v. Commissioner,supra, and cases cited in those opinions. For 1977, petitioner filed*504 no return of any kind. Petitioner knew the blank Forms 1040 or 1040A he filed did not constitute adequate returns. That fact is established by his background and the fact that he had filed proper returns and reported his salary in earlier years. Petitioner made no attempt to report his income or pay the taxes he owed. In fact he took affirmative steps to try to avoid paying the tax. That is shown by his whole course of conduct in attempting to avoid any withholding of his taxes and by his continuing to file either a blank form or no return at all after being specifically advised by respondent and his employer that blank forms he had filed were not proper returns and that the fact that he did not receive his salary in gold and silver was not a valid basis for not paying taxes. The course of conduct pertinent to this case began in early 1976 before petitioner had filed the Form 1040 for the first year before the Court. On January 13, 1976, before filing his return for the taxable year 1975, petitioner signed and filed with his employer a Form W-4E.In that Form W-4E he certified under penalties of perjury that he had incurred no liabilities for Federal income tax for 1975 and*505 that he anticipated that he would incur no liability for Federal income tax for 1976. That certification was false. The only basic for petitioner's claim that he was exempt from Federal income taxes was the fact that General Motors had not paid his salary in gold and silver. That argument is frivolous, and the Court is satisfied that petitioner knew it was frivolous. 5After petitioner filed the blank Form 1040 bearing the word "IMPOSSIBLE" for the year 1975, respondent*506 advised him that the document was not a proper return, quoted certain language from the Porth and Daly cases cited above, and informed petitioner of the filing requirements under the Internal Revenue Code. Thereafter, and apparently before petitioner filed his return for the year 1976, the personnel office at General Motors called petitioner in to explain his basis for claiming to be exempt from Federal income tax. That occurred in January 1977. The personnel officer, and thereafter the General Motors corporate legal and tax staff advised petitioner that the fact that he was not paid in gold and silver did not exempt him from liability for his taxes. Withholding of Federal income tax from his salary was resumed in May of 1977. At some point, before June 30, 1977, petitioner filed an essentially blank Form 1040A for the taxable year 1976. Again respondent advised him by letter dated June 30, 1977, that the document he filed was not a proper tax return. Moreover, after General Motors resumed withholding taxes from his salary, petitioner renewed his efforts to get his employer to cease withholding income taxes from his salary. He was not successful, and General Motors did*507 withhold income taxes for the rest of 1977. 6 For the taxable year 1977 petitioner filed no tax return at all. The whole course of petitioner's conduct (1) in failing to file proper returns and to report his salary which he knew constituted taxable income, (2) in striking off the declarations under penalties of perjury from the documents he filed, (3) in repeatedly trying to avoid having Federal taxes withheld from his salary, and (4) in falsely certifying to his employer that he owed no taxes, viewed in its entirety, satisfies the Court that petitioner fraudulently intended to evade taxes that he knew were due and owing. Having concluded that respondent proerly imposed the fraud additions under section 6653(b) in this case, we*508 do not consider respondent's alternative arguments in regard to the delinquency additions under section 6651(a) or the negligence additions under section 6653(a). Decision will be entered for the respondent.Footnotes1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years involved in this case, unless otherwise indicated.↩2. On the face of the statutory notice of deficiency, the tax deficiencies were erroneously listed as $ 777.57, $ 5,034.83, and $ 3,052.72 for the years 1975, 1976, and 1977, respectively. Those figures were the net increases in tax after crediting the taxes withheld from petitioner's salary. Respondent determined the deficiencies as listed in the text above, as was clearly shown by the statutory notice and as was explained in respondent's answer to the petition. In its redetermination of deficiencies, the Court does not take into consideration any taxes that have been withheld (Sections 31, 6211(b)(1)), but petitioner will of course be credited with any taxes withheld in any final computation.↩3. Even after the trial petitioner continued to raise frivolous legal arguments. After this case had been tried and briefs filed, petitioner filed a document entitled Motion for Summary Judgment and Brief.That document was filed and has been considered as petitioner's supplemental brief in this case. That document makes additional frivolous legal arguments that there is no statutory authority for respondent's statutory notice in this case. Petitioner argues that the deficiency procedures in the Code do not apply to wages under sections 3401-3404, the provisions governing collection of income tax at the source. That argument is without merit. It is true that the concept of "wages" for withholding purposes is not co-terminous with the broader concept of "income" to the employee under section 61. Central Illinois Public Service Co. v. United States,435 U.S. 21 (1978); Rowan Companies, Inc. v. United States,452 U.S. 247 (1981). In Central Illinois Public Service Co., upon which petitioner places great reliance, the Supreme Court simply held that the employer was not required to include reimbursements for lunch while on company travel as "wages" for income-tax withholding purposes, even though the reimbursements constituted income to the employees.Rowan involved Federal taxes imposed upon employers by the Federal Insurance Contributions Act (FICA) and the Federal Unemployment Tax Act (FUTA). The issue was whether the value of meals and lodging provided by the employer for its own convenience constituted "wages" for purposes of the employer's payment of FICA and FUTA. In that case there was no dispute that the value of meals and lodging furnished for the convenience of the employer was not income to the employee and was not "wages" for purposes of incometax withholding. In Rowan, the Supreme Court fully discussed Central Illinois, and at 254 explained the holding in the earlier case as follows: This holding relied on the recognition that "[t]he two concepts--income and wages--obviously are not necessarily the same. Wages usually are income, but many items qualify as income and yet clearly are not wages."… In short, wages is a narrower concept than income,… and the fact that the reimbursements were "income" to the employees did not necessarily mean that the employer had to include them in "wages" for income-tax withholding.(Emphasis added.) However, those cases have nothing to do with the issues before this Court. Petitioner's wages, salary, or compensation (however labeled) from his employment with the Fisher Body Division of the General Motors Corporation constituted taxable income under section 61, was subject to tax under Subtitle A of the Internal Revenue Code (Income Tax), and was subject to the deficiency procedures of the Code. Commissioner v. Glenshaw Glass Co.,348 U.S 426↩ (1955). Petitioner's arguments that the withholding provisions are invalid or have somehow been repealed by the termination of World War II are without merit but in any event such arguments do not help petitioner in this case. 4. Petitioner admits that he is not aware of any pending criminal investigation, possible prosecution, or criminal proceeding against him. Respondent's counsel too is unaware of any criminal matter involving petitioner, and the prior criminal case for failure to file returns for 1976 and 1977 would bar any further prosecution for those years. Petitioner was invited to advise the Court in a private conference in chambers as to the general basis for his concern about possible self-incrimination. There was such a chambers conference, attended only by petitioner, the trial judge, and the Court's trial clerk. That meeting failed to elicit any facts to suggest to the Court that there was any basis whatsoevery for petitioner's professed concern, and the Court so stated on the record. Petitioner again declined to present any evidence and declined to answer questions on cross-examination.↩5. For a sampling of the cases so holding, see Hatfield v. Commissioner,68 T.C. 895, 897 (1977); Cupp v. Commissioner,65 T.C. 68, 80-81, 84 (1975), affd. without published opinion 559 F. 2d 1207 (3d Cir. 1977); Gajewski v. Commissioner,67 T.C. 181, 193↩ (1976). We have restated these holdings in memorandum opinions of this Court too numerous to cite. The record does not indicate that any of petitioner's creditors ever demanded payment from him in gold or silver. The corner grocer, the landlord (or the mortgage company) and the local stores will and must accept payment in Federal Reserve Notes, and so will and must the Internal Revenue Service.6. Even assuming that petitioner was in good faith challenging the validity of the withholding provisions of the Code (see footnote 3 above), and there are no facts in the record to suggest that to be the case, that still would not explain petitioner's failure to file returns, to report his income, and to pay his taxes. The Court concludes that his efforts to avoid having taxes withheld were part and parcel of his efforts to evade paying taxes.↩