MARVIN D. MILLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket No. 7222-90
United States Tax Court
T.C. Memo 1993-121; 1993 Tax Ct. Memo LEXIS 119; 65 T.C.M. (CCH) 2196; March 29, 1993, Filed *119 Marvin D. Miller, pro se. For respondent: J. Eric Lawson. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by means of a statutory notice of deficiency, determined deficiencies in petitioner's Federal income tax and additions to tax for the taxable years 1982 through 1985 as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651
6653(a)(1)
6653(a)(2)
6654
6661
1982
$ 11,932
$ 2,983.00
$ 596.60
[1]
$ 1,161.69
$ 2,983.00
1983
6,005
1,501.25
300.25
[1]
367.47
1,501.25
1984
12,799
3,199.75
639.95
[1]
804.69
3,199.75
1985
5,983
1,495.75
299.15
[1]
342.84
1,495.75
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. This case presents a situation where, in the absence of books and records, respondent determined petitioner's *120 taxable income by use of an indirect method of reconstruction. In addressing the issues presented we examine the underlying assumptions and application of respondent's methodology of income reconstruction. After concessions, the issues presented for our consideration are as follows: (1) Whether petitioner had unreported gross business receipts for the taxable years 1982, 1983, 1984, and 1985 in the amounts of $ 295,955, $ 352,659, $ 342,097, and $ 357,534, respectively; (2) whether petitioner is entitled to business expenses and Schedule A itemized deductions for the years in issue in excess of those allowed by respondent; (3) whether petitioner had additional income of at least $ 4,366, $ 4,526, $ 4,695 and $ 4,863, for the taxable years 1982, 1983, 1984, and 1985, respectively, based on Bureau of Labor Statistics (BLS) figures; (4) whether petitioner had unreported interest income for the taxable years 1982, 1983, 1984, and 1985, in the amounts of $ 739, $ 1,310, $ 1,293, and $ 894, respectively; (5) whether petitioner is subject to self-employment tax for the years in issue; and (6) whether petitioner is liable for additions to tax under sections 6651, 6653(a), and 6654. [1]
*121 FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of the petition in this case, petitioner resided in Knox, Indiana. During the years in issue, petitioner was engaged in the sale of insurance as the sole proprietor of Insurance Consultants of Knox (Insurance Consultants). Sometime prior to the years in issue, petitioner opened a checking account at the Hamlet State Bank of Hamlet, Indiana (Hamlet). The printed checks for this account were in the name of "Insurance Consultants of Knox" and were used for personal and business purposes. Petitioner closed the account at Hamlet on December 5, 1985. On October 3, 1979, petitioner opened a checking account at the Farmers Bank & Trust Co. of Knox, Indiana (Farmers Bank). The printed checks for this account were in the name "Insurance Consultants of Knox". This account was likewise used for both business and personal purposes. For each of the years in issue petitioner submitted only limited information on a Form 1040 as a Federal income tax return. The submitted documents contain no information regarding *122 income, deductions, or tax owed, if any. The only information disclosed was petitioner's name, address, occupation, and filing status of married filing a separate return. For each of the years in issue petitioner claimed four exemptions. [2] All the line items on the return contain either the word "None" or "* *". The two asterisks refer to typed in statements by petitioner in which he made specific objection under the 5th Amendment and similar objections under the 1st, 4th, 7th, 8th, 9th, 10th, 13th, 14th, and 16th Amendments. Petitioner signed the returns submitted for each year in issue, but they contained the disclaimer that petitioner was confused as to the meaning of dollars, silver, gold, fiat, and paper. Petitioner's returns for 1982, 1983, and 1984 have each been the subject of prior litigation in the United States District Court for the Northern District of Indiana. *123 In each of those cases petitioner instituted an action challenging the Government's penalty assessment for the filing of a frivolous return under section 6702. In the first of these actions involving taxable year 1982, Miller v. United States, 577 F. Supp. 980 (N.D. Ind. 1984) (Miller I), the court in dismissing the case found petitioner's claim to be without merit and stated "Such unfounded assertions of a Fifth Amendment privilege on a purported tax return fall squarely within the statutory language of § 6702". The court in Miller v. United States, Cause No. S 84-684 (N.D. Ind. May 17, 1985) (Miller II), finding the issue before it substantially identical to that in Miller I, upheld the assessment of the frivolous return penalty for taxable year 1983 and awarded the Government costs and attorneys' fees in the amount of $ 500 pursuant to rule 11 of the Federal Rules of Civil Procedure. Presented a third time with a suit identical both in issue and facts to Miller I and II, the court in Miller v. United States, 669 F. Supp. 906, 909 (N.D. Ind. 1987), affd. 868 F.2d 236 (7th Cir. 1989), *124 finding the suit "patently frivolous", once again upheld the imposition of the section 6702 penalty, imposed monetary sanctions under rule 11 of the Federal Rules of Civil Procedure in the amount of $ 1,500, and enjoined petitioner from filing any action in that court without first obtaining leave to do so. Because of petitioner's complete lack of cooperation with respondent's agents in examination of his tax liability and his failure to produce books and records, respondent relied upon the bank deposits and cash expenditures method (hereinafter sometimes referred to as the bank deposits method) in reconstructing petitioner's income for the years in issue. Respondent analyzed petitioner's monthly bank statements to determine the total deposits for each of the years at issue. Respondent adjusted this calculation by subtracting those amounts which represented interest and transfers from savings accounts into checking accounts. Based upon this methodology respondent determined that for taxable years 1982, 1983, 1984, and 1985 petitioner had gross business receipts of $ 295,954.79, $ 352,659.70, $ 342,097.04, and $ 357,531.87, respectively. In determining petitioner's business expenses, *125 respondent reviewed the monthly bank statements and totaled the checks for each year. Respondent reviewed copies of the canceled checks and added to each year's total the checks written which cleared in the following year. Respondent then subtracted from the total, checks which were honored by the bank in prior years, checks determined to be for personal expenses, and returned checks. Because many of the copies of canceled checks were illegible, checks classified by respondent as unidentified either as to payee or purpose were also subtracted from these totals. In this manner, respondent determined that for the years in issue petitioner had total business expenses of $ 264,664, $ 332,246, $ 307,479, and $ 337,058, respectively. In examining petitioner's bank records, respondent's agent did not see any expenditures for food at home, food away from home, clothing, or other personal items. Because these items were not paid for from petitioner's bank accounts, respondent added to the reconstruction cost-of-living figures derived from the BLS to reflect income attributable to some other untraced source from which respondent presumed these expenses were paid. During the years in *126 issue, in addition to automobile and homeowner's insurance, petitioner maintained private health insurance coverage for himself and his family. OPINION 1. Unreported Gross Business Receipts
For each of the years in issue petitioner filed a Form 1040 with respondent. The documents submitted contain no information regarding income, deductions, or tax owed, if any. During examination of his tax liability, petitioner refused to cooperate with respondent's agents and failed to produce books and records from which his income could be determined. In the absence of adequate records, respondent may use a method of reconstruction which clearly reflects income. Holland v. United States, 348 U.S. 121 (1954); United States v. Johnson, 319 U.S. 503 (1943). The reconstruction of income need only be reasonable in light of all surrounding facts and circumstances. Giddio v. Commissioner, 54 T.C. 1530 (1970); Schroeder v. Commissioner, 40 T.C. 30 (1963). Respondent has great latitude in making deficiency determinations "particularly where the taxpayer files no returns *127 and refuses to cooperate in the ascertainment of his income." Giddio v. Commissioner, supra at 1533. Where, as here, there is an absence of adequate records this Court has approved of the use of the bank deposits method to reconstruct a taxpayer's income. Parks v. Commissioner, 94 T.C. 654, 658 (1990); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). In connection with respondent's reconstruction of income, where a taxpayer has failed to maintain or produce adequate records as to the amount and source of his income, and respondent has determined that the deposits are income, the taxpayer has the burden of showing that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Estate of Mason v. Commissioner, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Respondent's agent began by analyzing petitioner's monthly bank statements to determine the total deposits for each of the years at issue. This calculation was then adjusted by subtracting those amounts which *128 represented interest and transfers from savings accounts into checking accounts to determine gross business receipts (and avoid duplication). Based upon this methodology respondent determined that for taxable years 1982, 1983, 1984, and 1985 petitioner had gross business receipts of $ 295,954.79, $ 352,659.70, $ 342,097.04, and $ 357,531.87, respectively. Petitioner agrees with respondent's determination of gross business receipts for taxable years 1982, 1983, and 1984; however, petitioner contends that respondent's determination for taxable year 1985 is in error. Petitioner maintains that respondent's computations do not reflect a savings transfer of $ 10,700.63 and that respondent improperly included this amount in income. Respondent contends that petitioner failed to meet his burden of proving respondent's determination is erroneous. We agree with respondent. Petitioner was sanctioned for failure to comply with this Court's orders and Rules. Respondent had, through discovery, attempted to further refine the reconstruction of petitioner's income but petitioner failed to respond to the discovery and our orders requiring his responses. By order dated November 4, 1991, our *129 previous order for petitioner to show cause why this Court should not impose sanctions was made absolute, and petitioner was precluded from introducing into evidence any documents relating to or affecting respondent's reconstruction of income. At trial, the Court once again advised petitioner that since his refusal to show respondent his records forced the Government to rely on an artificial method of reconstruction, this Court would not, in the interest of fairness, now allow petitioner to offer records of income not in evidence to attack respondent's reconstruction. However, the sanctions imposed did not preclude petitioner from attacking respondent's methodology or from arguing that, as a matter of law, inappropriate standards were applied. Petitioner's inability to introduce documentary evidence to corroborate his testimony and prove that a savings transfer took place was of his own making. Petitioner has not shown that this amount is not properly includable in income; i.e., there has been no showing that this amount is a duplication. Nor has petitioner shown that this amount is from a nontaxable source. Petitioner has not shown, as a matter of either fact or law, that respondent's *130 methodology was flawed. The only documentary "evidence" [3] to support petitioner's contention is a photocopy of a Farmers Bank deposit slip with the handwritten notation "Certificate transfer" in the amount of $ 10,700.63. The notation on the deposit slip is no more persuasive than petitioner's self-serving testimony. Accordingly, as petitioner has failed to carry his burden of proof, respondent's determination is sustained. 2. Additional Business Expenses and Schedule A Itemized Deductions
Once gross business receipts were determined, respondent's agent reviewed the monthly bank statements and totaled the checks for each year. The agent reviewed copies of the canceled checks and added to each year's total the checks written which cleared in the following year. Respondent then subtracted from these totals checks which were honored by the bank in prior years, *131 checks determined to be for personal expenses and returned checks. Because many of the copies of canceled checks were illegible, checks classified by respondent as unidentified either as to payee or purpose were also subtracted from these totals. In this manner, respondent determined that for the years in issue petitioner had total business expenses of $ 264,664, $ 332,246, $ 307,479, and $ 337,058. After concessions by the parties, the only business expenses paid by check remaining in dispute are those written to insurance agencies or companies. Respondent contends that petitioner failed to prove that these checks were business rather than personal expenses. Petitioner contends that for taxable years 1982, 1983, and 1984, respondent, having been provided with copies of the canceled checks, should treat these checks as deductible business expenses as was similarly done for taxable year 1985. Petitioner maintains that since respondent allowed these deductions in 1985 with no underlying supporting documentation other than the canceled checks, respondent's methodology as to the other 3 years is inconsistent and in error. It is well settled that each tax year of the same taxpayer *132 is the origin of a new liability and a separate cause of action. Commissioner v. Sunnen, 333 U.S. 591, 597 (1948). "'An income tax deduction is a matter of legislative grace and * * * the burden of clearly showing the right to the claimed deduction is on the taxpayer.'" Indopco, Inc. v. Commissioner, 503 U.S.    ,    , 112 S. Ct 1039, 1042 (1992) (quoting Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943)). At the trial when petitioner was questioned about the records that would support his contention that these were business expenses, he either pled the Fifth Amendment or testified that those records were not retained. The fact that respondent may accept a taxpayer's unsubstantiated claimed deduction in one taxable year does not require respondent to do so in other taxable years. Moreover, the fact that an unsubstantiated deduction was allowed in one year does not by itself satisfy petitioner's burden of proving his entitlement to the claimed deduction in other years. Petitioner has failed to meet his burden of proof; accordingly, petitioner is not allowed to *133 claim business expenses paid by check in excess of those amounts agreed to by respondent. Petitioner alleges that he had additional business expenses paid in cash which are not reflected in respondent's calculations. Petitioner contends that he is entitled to a deduction for additional business expenses and itemized deductions paid in cash and respondent's calculations should be adjusted accordingly. Respondent contends that petitioner has not substantiated the claimed business expenses or itemized deductions. In addition, respondent maintains that a corresponding increase in petitioner's income would be required for any Schedule A itemized deduction or Schedule C expense paid in cash as no increase in petitioner's income was included in respondent's calculations of petitioner's gross income for these items. Petitioner offered documentary evidence to substantiate his claimed cash expenditures. Upon review of the evidence presented, we conclude that petitioner has substantiated cash business expenses for the 1982-85 tax years in the respective amounts of $ 775.28, $ 448.86, $ 566.16, and $ 1,079.01. However, where respondent's reconstruction is based on the bank deposits method, *134 cash expenditures are properly added to the bank deposits to arrive at gross income, unless it is shown that such amounts were included in respondent's computation or were from a nontaxable source. Since petitioner did not show that these amounts were deposited or were from a nontaxable source, we agree with respondent that a corresponding adjustment to gross income is required. This is so because undeposited cash may also constitute a source of income in addition to the deposits. 3. Income Based on the BLS Figures
In examining petitioner's bank records, respondent's agent did not see any expenditures for food at home, food away from home, clothing, or other personal items. Because these items were not paid for from petitioner's bank accounts, respondent concluded that petitioner paid for these items with funds from some untraced source. Respondent added to the reconstruction cost-of-living figures from the BLS to reflect income attributable to the untraced source from which respondent presumed these expenses were paid. Accordingly, using the BLS figures for these categories of personal expenditures respondent added to the reconstruction of income for the years 1982-85, *135 $ 4,366, $ 4,526, $ 4,695 and $ 4,863, respectively. This Court has approved respondent's use of the BLS figures in reconstructing a taxpayer's income. Kindred v. Commissioner, T.C. Memo. 1979-457, affd. 669 F.2d 400 (6th Cir. 1982); Burgo v. Commissioner, 69 T.C. 729, 749 (1978); Giddio v. Commissioner, 54 T.C. 1530 (1970). [4]Petitioner bears the burden of proving respondent's determination is in error. Rule 142(a).
It is petitioner's position that respondent's use of the BLS figures is unwarranted. Petitioner contends that prior to taxable year 1982 he had a cash hoard of approximately $ 21,000 which was used during the years in issue to pay both personal and business expenses. In *136 addition to his assertion that he had sufficient existing cash available to cover his living expenses, petitioner further alleges that the BLS figures represent a duplication of personal expenditures purchased by credit card, payment of which is traceable through his bank records. Petitioner also maintains that personal expenses encompassed in the BLS figures were paid from his business checking account. Respondent disputes the existence of petitioner's alleged cash hoard and argues that even if it did exist, it was depleted in 1981. Respondent contends that an analysis of the personal checks written from business checking accounts reveals that the checks were not duplicative of the amounts represented by the BLS figures. Respondent further asserts that by not providing supporting documentation of credit card charges, petitioner has failed to carry his burden of proving respondent's use of the BLS figures is in error. We generally agree with respondent. Petitioner's self-serving testimony as to his cash hoard was devoid of credibility. Petitioner has failed to present evidence to demonstrate that the amounts charged to credit cards were for the types of expenses reflected in *137 the BLS figures. While we agree with the appropriateness of respondent's reliance on the BLS figures, we are unable to approve respondent's bottom-line determinations for taxable years 1983, 1984, and 1985. A review of the record before us indicates that for 1983, 1984, and 1985, the BLS figures are duplicative of personal expenses paid from petitioner's business checking account in the respective amounts of $ 30.40, $ 81.50, and $ 11. While these amounts are comparatively small, petitioner nonetheless is entitled to a downward adjustment from the amounts determined by respondent derived from the BLS figures. With the exception of the aforementioned adjustments to the BLS figures, respondent's determination is sustained. 4. Interest Income
Section 61 provides that gross income means all income from whatever source derived. Gross income includes interest income. Sec. 61(a)(4); sec. 1.61-7(a), Income Tax Regs.
Respondent determined that for the taxable years ended December 31, 1982, 1983, 1984, and 1985 petitioner had unreported interest income in the amounts of $ 739, $ 1,310, $ 1,293, and $ 894, respectively. Petitioner presented no evidence at trial nor asserted *138 any argument on brief challenging respondent's determination as erroneous. In this regard, either petitioner has abandoned the issue, or, even if he has not, we hold that petitioner has failed to meet his burden of proof to show that respondent's determination is in error. Rule 142(a). Accordingly, respondent's determination is sustained. 5. Self-Employment Tax
Subsections (a) and (b) of section 1401 impose taxes on the "self-employment income" of every individual. Self-employment income means the "net earnings from self-employment derived by an individual * * * during any taxable year" not in excess of a specified ceiling amount. Sec. 1402(b). Petitioner contends that, because he has "rescinded all benefit" from Social Security, he is exempt from self-employment tax. It appears that petitioner is seeking exemption under the provisions of section 1402(g), which provides, in part: (g) Members of Certain Religious Faiths. -- (1) Exemption. -- Any individual may file an application (in such form and manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he is a member of a recognized *139 religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act). * * * [Emphasis supplied.]
The plain language of the statute and an examination of the legislative history reveal that Congress intended to make an exemption available under this section only to those who were opposed to the receipt of any insurance, whether public or private. We conclude that petitioner does not qualify for the exemption under section 1402(g). We base this conclusion on several factors. First, the statute and the legislative history make clear that to qualify for the exemption, a person must be opposed to an insurance program, whether public or private. Petitioner has evidenced no such opposition; in fact petitioner earns his livelihood from the sale of private insurance and, for the years *140 in issue, maintained private health insurance coverage for himself and his family. Furthermore, taxpayers cannot qualify for the exemption based merely on their own individual views; they must show that they are members of a sect and that the tenets of that sect are opposed to such insurance programs. Petitioner has made no such showing either in these proceedings or in his "application" [5] for exemption. In addition, to qualify for the exemption, petitioner must show that the Secretary of Health, Education, and Welfare (now Secretary of Health and Human Services) has found that the sect has a practice of making alternative arrangements for the care of its members. Petitioner has not shown that his sect has any such practice or that the Secretary has made such a finding. Devine v. Commissioner, T.C. Memo. 1980-511, affd. without published opinion 673 F.2d 1335 (7th Cir. 1981). *141 6. Additions To Tax
Respondent determined that petitioner is liable for the addition to tax imposed pursuant to section 6651(a)(1) for failure to file a required return on or before the prescribed filing date (determined with regard to any extension of time for filing). Section 6651 provides, in pertinent part, that in case of failure to file any return required, unless it is shown that such failure is due to reasonable cause and not willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is not for more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. It is not clear whether it is petitioner's position that the Forms 1040 as filed constitute timely returns or whether petitioner is contending that his constitutional objections constitute reasonable cause. In either event, petitioner's argument fails. The incomplete Forms 1040 filed by petitioner do not constitute returns. In order for a document to constitute a valid return, it must contain sufficient information *142 for the Commissioner to compute and assess the liability with respect to a particular taxpayer. Automobile Club v. Commissioner, 353 U.S. 180, 188 (1957); Florsheim Bros. Drygoods Co. v. United States, 280 U.S. 453 (1930); Reiff v. Commissioner, 77 T.C. 1169 (1981). The disclosure of such data must be provided in a uniform, complete, and orderly fashion. Commissioner v. Lane-Wells Co., 321 U.S. 219, 223 (1944). Furthermore, a Form 1040 does not qualify as a return where, as here, it does not specifically state the items of gross income and the deductions and credits claimed by the taxpayer. United States v. Moore, 627 F.2d 830 (7th Cir. 1980); Thompson v. Commissioner, 78 T.C. 558 (1982); Conforte v. Commissioner, 74 T.C. 1160, 1195 (1980). Petitioner's constitutional objections do not, in the context of this case, constitute reasonable cause. Petitioner misinterprets the standard set forth and repeatedly applied by this and other courts in distinguishing a valid *143 exercise of a Fifth Amendment privilege on a tax return from a blanket claim of privilege unsupported by any reasonable showing with respect to how responses to particular questions might incriminate a taxpayer. See United States v. Sullivan, 274 U.S. 259 (1927); Heligman v. United States, 407 F.2d 448, 450 (8th Cir. 1969); Coulter v. Commissioner, 82 T.C. 580, 583-584 (1984). This Court has consistently held that the Fifth Amendment privilege against self-incrimination does not apply where the possibility of criminal prosecution is remote or unlikely, and remote or speculative possibilities of prosecution for unspecified crimes are not sufficient. Coulter v. Commissioner, supra; Rechtzigel v. Commissioner, 79 T.C. 132 (1982), affd. 703 F.2d 1063 (8th Cir. 1983); Reiff v. Commissioner, supra; Ryan v. Commissioner, 67 T.C. 212, 217 (1976), affd. 568 F.2d 531, 539 (7th Cir. 1977); Figueiredo v. Commissioner, 54 T.C. 1508, 1511-1512 (1970), *144 affd. per order 73-2 USTC par. 9713 (9th Cir. 1973). Petitioner, when questioned by the Court, produced no information to suggest that he was or ever had been under investigation for any tax or nontax crime. If petitioner had at any time been notified that he was a target of any grand jury proceeding or any other criminal investigation, he did not apprise the Court of this. The period of limitations for criminal prosecution for tax evasion or a failure to file under section 6531 has expired with respect to petitioner's taxable years 1982, 1983, and 1984. At the time of trial on November 4 and 5, 1991, the 6-year period for prosecution for taxable year 1985 would have expired on April 15, 1992. Respondent's counsel, upon the Court's inquiry, confirmed that petitioner is not currently the subject of any criminal investigation for the taxable years at issue or for any other years. Accordingly, respondent's determination that petitioner is liable for additions to tax under section 6651 is sustained. Respondent also determined that petitioner was liable for additions to tax for negligence under section 6653(a). Section 6653(a)(1) imposes an addition to *145 tax equal to 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) imposes a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of the rules and regulations. For purposes of this statute negligence is the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)). Petitioner contends that because he was exercising his Fifth Amendment right, imposition of the addition to tax is unwarranted. We disagree. Petitioner has on three previous occasions unsuccessfully litigated the issue of whether the Forms 1040 as submitted were frivolous returns under section 6702. See Miller v. United States, 669 F. Supp. 906 (N.D. Ind. 1987), affd. 868 F.2d 236 (7th Cir. 1989); Miller v. United *146 States, Cause No. S 84-684 (N.D. Ind. May 17, 1985); Miller v. United States, 577 F. Supp. 980 (N.D. Ind. 1984). The court in Miller v. United States, 669 F. Supp. 906, 908 (N.D. Ind. 1987), when presented with the same Form 1040 as at issue in this case for taxable year 1984, stated: Moreover, in this circuit, it is well established that a taxpayer may not use the fifth amendment as a basis for refusing to provide any financial data on his federal income tax return unless he makes a colorable showing that he is involved in some activity for which he could be criminally prosecuted. * * *
Petitioner, having three times been found subject to the frivolous-return penalty of section 6702, was well aware that the documents submitted did not constitute returns and that his constitutional arguments were groundless. We conclude that petitioner's persistence in advancing frivolous constitutional objections known by him to be spurious demonstrates an intentional disregard for rules and regulations. Accordingly, respondent's determination is sustained. Section 6654(a) requires the imposition of an addition to tax in *147 the case of any underpayment of estimated tax by an individual. Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960). Section 6654(e) provides exceptions to the imposition of addition to tax under section 6654(a). Petitioner bears the burden of proving the applicability of these exceptions. Other than renewing his constitutional objections, petitioner introduced no evidence as to the applicability of the exceptions provided under section 6654(e). Accordingly, respondent's determination is sustained. To reflect concessions and the foregoing, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on deficiency.↩
1. Respondent has conceded the additions to tax under sec. 6661.↩
2. The parties have agreed that petitioner is entitled only to exemptions for his wife, Linda S. Miller, and his daughter, Amber Linn Miller.↩
3. We note that at trial a photocopy of a deposit slip was marked for identification as petitioner's Exhibit 7 but was not offered into evidence.↩
4. See also Patel v. Commissioner, T.C. Memo. 1988-33↩ (respondent's use of Bureau of Labor Statistics figures in conjunction with bank deposits method of reconstruction sustained).
5. Sec. 1.1402(h)-1(b), Income Tax Regs.↩, provides that application for exemption shall be filed on Form 4029 in duplicate with the internal revenue official or office designated on the form. Petitioner did not present evidence indicating compliance with the regulation. Our use of the term application refers to petitioner's letter to the Social Security Administration wherein he stated that due to his "own religious beliefs and moral convictions" he no longer wished to be covered by Social Security.